IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15–cv–00146–RM-KMT

PIOTR AURZADNICZEK aka PETE AURZADNICZEK, and
JAMIE BEARD,

      Plaintiffs,

v.

HUMANA HEALTH PLAN, INC.,
HUMANA INSURANCE COMPANY, and
EHEALTHINSURANCE SERVICES, INC. dba EHEALTH,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendants Humana Health Plan, Inc. and Humana Health Insurance Company's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 27)." (Doc. No. 41 ["Humana Mot."], filed March 16, 2015). Plaintiffs filed a "Brief in Response to Defendants Humana Health Plan, Inc. and Humana Health Insurance Company's Motion to Dismiss Amended Complaint (Dkt # 41)" (Doc. No. 45 ["Resp. Hum."], filed March 20, 2015) and Humana filed "Humana Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' Amended Complaint." (Doc. No. 55 ["Hum. Reply"], filed on April 2, 2015.) Plaintiffs filed an unauthorized surreply on April 27, 2015. (Doc. No. 62.)

      Also before the court is eHealthinsurance Services, Inc. d/b/a eHealth's ("eHealth") "Motion to Dismiss Plaintiffs' Amended Complaint." (Doc. No. 42 ["eHealth Mot."], filed

March 16, 2015.)  Plaintiffs filed their "Brief in Response to Defendant eHealth's Motion to Dismiss Plaintiffs' Amended Complaint (Dkt # 42)" (Doc. No. 46 ["Resp. eHealth"], filed on March 20, 2015), to which eHealth replied. (Doc. No. 58 ["Reply eHealth"], filed on April 3, 2015.)  Plaintiffs filed an unauthorized surreply on April 27, 2015.  (Doc. No. 63.)

The Local Rules of this district do not contemplate surreplies, no matter how entitled by the submitting party, *see* LCvR 7.1(d), and Plaintiffs neither sought nor obtained leave to file surreplies in this matter.  However, this court allowed oral argument on both motions on June 9, 2015 and took the motions under advisement.  The surreplies were not stricken by the court at the time of oral argument and there is no compelling reason to strike them now.  Therefore, the court will consider the arguments therein.

The issues are now ripe for recommendation to the District Court.  Both Defendants request dismissal of all claims against them alleging Plaintiffs' failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

### *LEGAL STANDARD*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v.*

*Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 679-81.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted) ("the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.")

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiffs' Amended Complaint [Doc. No. 27] ("Am.Compl.") and relevant attached or referenced documents[1] unless otherwise noted.  On December 9, 2013, Ms. Beard saw advertising on eHealth's website for a health insurance policy offered by Humana.  (Am.Compl. ¶ 7.)  Ms. Beard applied for insurance and completed the payment authorization form on Defendant eHealth's website, which advised Applicant Beard that the monthly premium would be $363.49 per month.  (*Id.* ¶ 9; Resp. Hum., Ex. 1, Humana Individual Insurance Application [Doc. No. 45-1] ("Application") and Ex. 2, Payment Authorization & Association Enrollment [Doc. No. 45-2] ("Beard Payment Authorization") (bank information redacted.))  Ms. Beard applied for health insurance coverage for herself, Mr. Aurzadniczek, and their son.  (Am.Compl. ¶ 7.)  On page five, the Application explained, "If this application for coverage is accepted, coverage will be effective on the date specified by Humana on the policy.  Unless Humana agrees to an earlier date, the effective date for sickness begins on

---

[1] Plaintiff Beard submitted forms to eHealth and Humana to obtain insurance, and received communications from eHealth and Humana that she claims she relied upon concerning her coverage and that form the basis for several of her claims in the Amended Complaint.  These materials are properly considered within the context of Defendants' motions. *Alvarado v. KOB-TV, L.L.C.*, 483 F.3d 1210, 1215 (10th Cir. 2007) (appropriate to consider documents central to plaintiff's claim); *Chase v. Bank of New York*, Civil No. 13-cv-2265-RBJ-KMT, 2014 WL 1797473, at *6 n.1 (D. Colo. May 6, 2014) (judicial notice under Fed. R. Evid. 201 may be given to state court filings and register of actions in evaluating motion to dismiss under Rule 12(b)(6)).

the 15th day after the approved effective date of the policy." (*Id.* ¶ 8; Application at 5.)  The clause appeared under the bold-typed heading, "True and Complete Acknowledgment," within a paragraph containing other information and was not itself highlighted, nor was the language displayed in bold typeface, and its text size was the same as surrounding text.  *Id.*

On December 10, 2013, eHealth sent two emails to Ms. Beard advising that her application for insurance had been approved.  (*Id.* ¶ 10.)  The first email said in part, "Congratulations! Humana has approved your health insurance application. Your coverage will be effective as of 12-10-2013."  (*Id.*; Resp. Hum., Ex. 8 [Doc. No. 45-8] ("eHealth email #1").)  The second email stated "You've been approved!" and also stated, "Your coverage will be effective as of 12-10-2013."  (*Id.;* Resp. Hum., Ex. 3 [Doc. No. 45-3] ("eHealth email #2).)

On December 14, 2013, Humana sent two confirming letters to Ms. Beard informing her that her policy was effective December 10, 2013.  (Am.Compl. at ¶ 12; Resp. Hum., Ex. 4 [Doc. No. 45-4] ("Messer letter") and Ex. 5 [Doc. No. 45-5] ("DeRaleau letter".))  Neither letter specifically mentioned a bodily injury effective date nor a sickness effective date.  Both letters discussed the regular monthly premium of $363.49.  The Messer letter primarily concerned the payment of premium and the source of the electronic payments and stated that the monthly premium for December would be a "[p]ro-rated Payment from 12/10/2013 to 12/31/13" of $257.96.  The DeRaleau letter advised that "Health Insurance Policy No. 5328B4, Personal Insurance Identification Cards [and] An explanation of your payment"[2] were attached and further

---

[2] Plaintiffs, in the Amended Complaint, claim that Humana "did not ever mail the Plaintiffs their policy or their identification cards" in spite of the language of the letter which Plaintiffs admit they received and relied upon.  (Am.Compl., ¶ 12(c)).  "Plaintiffs understood and reasonably expected from this letter . . . .")  "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."  *Selhime v. Carlson*, No.

advised Ms. Beard, "Please log on to **Humana.com** to view your certificate/policy and log on to

**info.humana-one.com** to view all other plan documents."  (*Id.* (emphasis in original).)

The insurance policy issued by Humana to Plaintiffs is attached to the Amended

Complaint collectively at Doc. Nos. 27-2, 27-3, 27-4, 27-5, 27-6 and 27-7.  The face page of the

Policy clearly states on page 1:

| | |
|---|---|
| Policy holder: | BEARD JAMIE L |
| Policy number: | 5328B4 |
| Effective date: | |
| Bodily injury: | 12/10/2013 |
| Sickness: | 12/25/2013 |
| Initial Premium amount | $363.49 Monthly |

(Doc. No. 27-2 at 2.)  The Policy number referenced in the DeRaleau letter matches the number

on the Policy itself.

At an unspecified time, Plaintiff Aurzadniczek felt a lump on his left testicle.  On

December 19, 2013, he went to see Dr. John Logan.  (Am.Compl. ¶ 13.)  That same day, the

doctor sent Mr. Aurzadniczek for imaging.  (*Id.* ¶ 14.)  The imaging revealed that Mr.

Aurzadniczek had a mass on his scrotum that was "concerning for malignancy." (*Id.*)  Mr.

Aurzadniczek was scheduled for surgery on December 20, 2013 but the surgery was thereafter

---

12-CV-02876-RBJ-CBS, 2014 WL 641762, at *2 (D. Colo. Feb. 19, 2014) (citing *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997)  Where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).  This court, therefore, does not accept as true that Humana never mailed, and Plaintiffs never received, their health insurance policy from Humana. This fact is relatively unimportant to the court's analysis, however, because there is no dispute that on December 14, 2013, Plaintiffs were advised how to view their Policy and other documents by simply logging on to the website, if they chose to do so.

"rescheduled for after December 25, 2013 due to the provider's unwillingness to perform the surgery earlier because of the said policy's purported December 25, 2013 sickness effective date." (*Id.*)

Plaintiff Aurzadniczek was ultimately diagnosed as having embryonal carcinoma of the left testicle. (*Id.*)  Between December 26, 2013 and March 14, 2014, Mr. Aurzadniczek received supplemental care related to his condition and submitted 93 claims to Humana totaling $206,530.82. (*Id.* ¶¶ 15–16.)  Humana denied the claims for services rendered on December 19, 2013, determining that these were "[s]ervices for sickness" that were "not covered prior to Sickness Effective Date," as outlined in the Policy. (*Id.* ¶ 16.)  Regarding the claims between December 26, 2013 and March 14, 2014, Humana found that these claims were "not a covered expense as it was related to a pre-existing condition" and denied and did not pay for the services. (*Id.*)  Plaintiffs timely appealed.  On September 22, 2014, Humana sent a letter to Plaintiffs affirming its initial determination of denial. (*Id*. ¶ 28.)

Plaintiffs bring claims against Humana for breach of contract and willful and wanton common law breach of contract; reformation and declaration of rights along with a claim for benefits under reformed contract and for breach of reformed contract (collectively "reformation claims"); negligent misrepresentation and violation of the Colorado Consumer Protection Act ("CCPA"); common law and statutory bad faith; and loss of consortium.  Plaintiffs bring claims against eHealth for negligent misrepresentation and violation of the CCPA.  Both Defendants move for dismissal of all claims against them and dismissal of the case.

*ANALYSIS*

**A.**     ***Claims against Both Defendants***

      **1.**     ***Fifth Claim for Relief - Negligent Misrepresentation***

Plaintiffs allege that both eHealth and Humana negligently misrepresented a coverage component of the health insurance policy sold to them.  Plaintiffs base this claim on the fact that both companies sent correspondence to Beard within days of receipt of her application which touted an "effective date" for coverage of December 10, 2013, but did not point out that the policy contained a separate effective date of December 25, 2013 for coverage of sickness. Plaintiffs also argue that since the December 2013 prorated premium amount did not reflect a discount for only partial coverage between December 10, 2013 and December 25, 2013, the defendants negligently misrepresented that Plaintiffs were fully covered as of December 10, 2013.

Plaintiffs' claim is fairly characterized as negligent **non-disclosure**, rather than misrepresentation, leading to Plaintiffs' apparent belief that all health coverages began on December 10, 2013.  *See  Central Masonry Corp. v. Bechtel Nat'l, Inc.,* 857 F. Supp. 2d 1160, 1164 (D. Colo. 2012) ("[C]oncealment [or misrepresentation] suggests affirmative acts while nondisclosure connotes inaction despite a duty.") (citing *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 16 (Colo. App. 2010), *as modified on denial of reh'g* (Apr. 1, 2010)).  In *Colo. Coffee Bean*, the court concluded that negligent misrepresentation claims are limited to affirmative representations.  *Id.* at 31 ("[O]ur analysis [on a negligent misrepresentation claim] is limited to what [defendant] affirmatively represented, not what it failed to disclose"); *but see Sheffield Servs. Co. v. Trowbridge*, 211 P.3d 714, 725 (Colo. App. 2009), *overruled on other*

*grounds by Weinstein v. Colborne Foodbotics, LLC*, 302 P.3d 263, 268-69 (Colo. 2013)

(assuming but not deciding that negligent nondisclosure claim would be viable in Colorado).

The Colorado Supreme Court has never adopted a claim for negligent non-disclosure or

negligent omission as distinct from negligent affirmative misrepresentations or fraudulent

omission or concealment.  *See Bloskas v. Murray*, 646 P.2d 907, 914 (Colo. 1982) ("The tort of

negligent misrepresentation provides a remedy for *false information negligently given* a person

who relies to his detriment thereon.") (emphasis provided).  Under federal precedent, a claim for

negligent non-disclosure is generally merely "analyzed as a claim for negligent

misrepresentation."  *Central Masonry*, 857 F.Supp.2d at 1163-64 (citing *Sheffield*, 211 P.3d at

724).  Since the issue in unclear, this court, at this stage of the litigation, will assume a viable

claim could be found to exist for negligent non-disclosure as analyzed under a negligent

misrepresentation analysis.  *Id.*

The elements of a claim of negligent misrepresentation are: (1) one in the course of his or

her business, profession or employment; (2) makes a misrepresentation of a material fact,

without reasonable care; (3) for the guidance of others in their business transactions; (4) with

knowledge that his or her representations will be relied upon by the injured party; and (5) the

injured party justifiably relied on the misrepresentation to his or her detriment.  *Templeton v.*

*Catlin Specialty Ins. Co.*, 612 F. App'x 940, 953 (10th Cir. 2015); *Allen v. Steele*, 252 P.3d 476,

482 (Colo. 2011).  "A misrepresentation conveys '*false information*' . . . that is, it must be a false

statement of fact."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009) (emphasis

provided); *see also* Colo. Jury Instr., Civil 9:4 (element of liability that "defendant gave false

information to the plaintiff"); *Gilmore v. Ute City Mortg. Co.*, 660 F. Supp. 437, 441 (D. Colo.

1986) ("There can be no misrepresentation if the representation is true, regardless of whether the representation is fraudulently or negligently made."). Obviously, if a non-disclosure claim is viable at all, the negligent omission must create an impression of false information.

Here, eHealth, at the first contact with Plaintiff Beard, advised her that the effective date for coverage for sickness under the policy that she was seeking would not begin until 15 days after the effective date of the policy. (Am.Compl. ¶ 8.) The Policy, accessible to Plaintiffs by December 14, 2013 on the website listed in the DeRaleau letter, states prominently that the effective date of the benefits coverage for bodily injury is December 10, 2013 and the benefits coverage for sickness is effective December 25, 2013. Additionally, on December 19, 2015, Dr. John Logan, treatment provider, and Mr. Aurzadniczek were notified that the sickness benefit effective date was December 25, 2013, causing the decision to delay surgery until December 26, 2013 in order to be within the coverage period.

The two email transmissions from eHealth truthfully stated that the effective date of the policy was December 10, 2013, which comports with the definition of "effective date" as set forth in the policy itself. (Doc. No. 27-5 at 79.) At best, all that is alleged is that not <u>every</u> document sent from eHealth to Plaintiffs contained <u>every</u> limitation on the details of the coverage provided in the Policy.

Both letters sent to Plaintiffs by Humana contained information about the regular monthly policy premium. That information was truthful. The DeRaleau letter explained that the monthly premium for December 2013 would be pro-rated based on the date the Policy was effective, December 10, 2013. Therefore, Plaintiffs would receive nine days credit for not having insurance December 1 – 9, 2013; otherwise, the premium for December was the same as

for the following months of coverage.  There was no representation on the Application, the Policy or in any other communication from Humana to Plaintiffs that they would receive any premium reduction concerning the 15 day waiting period before sickness coverage would become effective, even where the sickness effective date was clearly set forth.  There was no misrepresentation made by Humana in calculating the premium due.  The fact that Plaintiffs may have considered it unfair that they were required to pay a full daily premium between December 10-25, 2013 when they were not covered for sickness does not mean that any misrepresentation or negligent omission was made.  Humana simply did not provide any premium concession for the absence of sickness coverage during the sickness waiting period.

The rule of reasonable expectations provides that an insurer who wishes to avoid liability must do so in clear and unequivocal language and must call such limiting conditions to the attention of the insured. *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 324 (Colo. App. 1995); *2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, No. 12-CV-02167-PAB-KLM, 2013 WL 5729932, at *8 (D. Colo. Oct. 18, 2013).  Justifiable or reasonable reliance is an essential element of a negligent misrepresentation claim, *Allen,* 252 P.3d at 482, and reliance is unreasonable when the plaintiff is in possession of, or has equal access to, the allegedly false or omitted information. *See, e.g., M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994) (noting that reliance unreasonable where plaintiffs have "access to information that was equally available to both parties and would have led to the true facts"); *Cherrington v. Woods*, 290 P.2d 226, 228 (Colo. 1955) ("Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not

be heard to say that he has been deceived by the vendor's representations."); *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 749 (Colo. App. 2002) (finding buyer's reliance unreasonable where buyer admitted that seller had previously provided documents showing true facts); *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. App. 2000) (holding reliance unreasonable where undisputed facts showed that plaintiffs had documents setting out the true facts and had previously been given information correcting the alleged misrepresentation). Although the existence of reasonable reliance is ordinarily a factual question, it may be resolved as a question of law when the relevant facts are not in dispute. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994); *Colorado Coffee Bean*, 251 P.3d at 31; *Nielson v. Scott*, 53 P.3d 777, 780 (Colo. App. 2002).

There is no requirement that every policy exclusion or limitation appear in every communication between insurer and insured.  Here, the 15 day waiting period for sickness coverage was truthfully set forth in the Application just above Ms. Beard's signature and was also featured prominently on the face page of the insurance Policy.  The Policy was available to Plaintiffs online at least by December 14, 2013[3] – before Mr. Aurzadniczek went to see Dr. Logan on December 19, 2013.

Plaintiffs have simply failed to set forth facts, accepted as true, to adequately meet the elements of a claim for negligent misrepresentation in that they have alleged no misrepresentation of a material fact and no omission of information that would convey a false statement about the insurance benefits under the policy.  Further, the facts, accepted as true,

---

[3] In light of the fact that Ms. Beard searched for insurance online and applied for the Humana policy online, from an online broker, there is no reason why she would not be expected to review her policy and other documents online.

show no reasonable reliance on the emails and letters from eHealth and Humana such that would

constitute waiver of the 15 day waiting period for sickness benefits because both the Application

and the Policy clearly set forth the limitation.

Therefore, this court recommends Plaintiffs' Fifth Claim for Relief, Negligent

Misrepresentation, be dismissed against Defendants eHealth and Humana.

### 2.    *Ninth Claim for Relief - CCPA*

Plaintiffs allege that eHealth and Humana engaged in deceptive trade practices and/or

caused another to engage in deceptive trade practices, in violation of Colo. Rev. Stat. § 6-1-105.

Plaintiffs contend that in the course of each of Defendants' businesses, they knowingly made a

false representation as to the characteristics and benefits of the Policy of insurance *via* the two

emails sent by eHealth on December 10, 2013 and the two letters sent by Humana on December

14, 2013.  Plaintiffs allege that the four communications to them indicated that they were

covered for all health related matters under the policy as of December 10, 2013, when in fact

there was no sickness coverage under the Policy until December 25, 2013.  This, Plaintiffs claim,

violated Colo. Rev. Stat. § 6-1-105(1)(e).  (Am.Compl. ¶ 73.)  Plaintiffs allege Defendants knew

that the coverage representation implicit in the four communications sent by eHealth and

Humana was false or made recklessly and willfully without regard to their consequences.  (*Id.*)

To state a claim for relief under the CCPA, a plaintiff must allege: (1) that the defendant

intentionally engaged in an unfair or deceptive trade practice; (2) that the challenged practice

occurred in the course of the defendant's business, vocation, or occupation; (3) that it

significantly impacts the public as actual or potential consumers of the defendant's goods,

services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest;

and (5) that the challenged practice caused the injury. *Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006).  Plaintiffs' Amended Complaint references four types of deceptive trade practices that they assert eHealth and Humana committed: 1) false representations about the characteristics of the Policy; 2) false representations about the price of the Policy; 3) advertising the Policy with intent not to sell it as advertised; and 4) "bait and switch." (*See* Am.Compl. ¶ 75, alleging violations of Colo. Rev. Stat. § 6-1-105(1)(e), (i), (l), and (n), the CCPA.))

Regardless of which 'deceptive trade practice' is alleged, however, in a CCPA claim the plaintiff must show the defendant *knowingly* engaged in the practice, meaning that the CCPA "'provides an absolute defense' to a misrepresentation caused by negligence or an honest mistake." *Crowe*, 126 P.3d at 204.  *See also Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) ("To be a deceptive trade practice under the CCPA, 'a false or misleading statement' must be made 'with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff.'").

A material omission is a deceptive trade practice if the defendant failed to "disclose material information . . . which information was known at the time of an advertisement or sale if such failure to disclose such information was *intended to induce the consumer to enter into a transaction*." *Campfield* at 1120-21 (citing Colo. Rev. Stat. § 6–1–105(1)(u) (emphasis provided)).  Each of the deceptive trade practices alleged by Plaintiffs involves either what Plaintiffs claim is essentially inadequate notification that health coverage for sickness, as opposed to bodily injury, is unavailable until 15 days after the original effective date of the

policy or that communications made after Ms. Beard's application for the health insurance had

been accepted by Humana were misleading as to that sickness coverage delay.

As noted previously, there was no misrepresentation of a material fact or an omission

creating false information.  Therefore, claims based on theories one and two should be

dismissed.  Also, there is no allegation that the communications on December 10 and 14, 2013

from eHealth and Humana were <u>intended</u> to induce Plaintiffs as consumers to enter into a

transaction with eHealth or Humana.  Therefore, the complained of omission could not be in

violation of the CCPA.  *Campfield* at 1120; *Spera v. Samsung Elecs. Am., Inc.*, No. 2:12-CV-

05412 WJM MF, 2014 WL 1334256, at *4 (D.N.J. Apr. 2, 2014) (applying Colorado law and

stating, "[t]he CCPA also requires a showing of scienter when a claim is based on an alleged

omission. Co. Rev. St. § 6–1–105(1)(u).").  The following cases discuss similar provisions in

other consumer state statutes: *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, No.

1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *31 (D.N.J. July 29, 2015); *Benjamin v.

CitiMortgage, Inc.,* Civ. 12–62291, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013); *Connick

v. Suzuki Motor Co.,* 675 N.E.2d 584, 595 (Ill. 1996).

There is no factual allegation supporting Plaintiffs' bald allegation that the omission of

the fact that sickness coverage did not begin until December 25, 2013, occurring within the two

communications from eHealth on December 10, 2013, was "intended to induce the consumer to

enter into a transaction."  *Id*.  By the time the two emails were transmitted from eHealth to

Plaintiff Beard, the transaction or sale of the health insurance Policy had already been completed.

The communications were merely confirmation that Ms. Beard's application had been accepted

and that Humana had agreed to issue a policy of insurance.  The Application form, which was

published prior to Ms. Beard's seeking health insurance from eHealth and therefore could be viewed as being an inducement for a consumer to purchase health insurance from Humana through eHealth, contained an accurate advisement that "the effective date for sickness begins on the 15th day after the approved effective date of the policy." (Application at 5; Am.Compl. ¶ 8.)

The same is true of the two letters sent by Humana on December 14, 2013. Neither were inducements to Plaintiffs to purchase Humana health insurance; rather, they were confirmation that Humana had agreed to accept Plaintiffs as insureds. The Policy, as noted, prominently displayed the sickness coverage delay on the actual face page.

Finally, there is no factual allegation supporting a claim the insurance policy received was in any way different from what was advertised *via* the Application. The Application set forth the 15 day waiting period for sickness coverage and the Policy contained that same provision. Also, the insured was so advised verbally when he sought pre approval for coverage for surgery, originally scheduled for December 20, 2013.

Having found that the Ninth Claim for Relief fails to state a claim on this basis, there is no need for the court to address Plaintiffs' public impact allegations as to the CCPA. Therefore, this court recommends that Plaintiffs' Ninth Claim for Relief, Violation of the CCPA, be dismissed against Defendants eHealth and Humana. Further, having found that the only two claims against Defendant eHealth should be dismissed, this court also recommends that Defendant EHEALTHINSURANCE SERVICES, INC. dba eHEALTH be dismissed as a party to this action.

**B.**     ***Remaining Claims Against Defendant Humana***

**1.**     ***Second, Third, and Fourth Claims for Relief - Reformation Claims***

Contract reformation is an equitable remedy.  *Affordable Country Homes, LLC v. Smith*, 194 P.3d 511, 515 (Colo. App. 2008).  "When a contractual provision unambiguously resolves the parties' dispute, the interpreting court's task is over."  *Level 3 Commc'ns, LLC v. Liebert Corp.,* 535 F.3d 1146, 1154 (10th Cir. 2008).  "Courts should not rewrite insurance policy provisions that are clear and unambiguous." *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo. 1999).

Reformation is permissible when either 1) the parties made a mutual mistake or 2) one party made a unilateral mistake <u>and</u> the other party engaged in fraud or inequitable conduct. *Boyles Bros. Drilling Co. v. Orion Indus., Ltd.*, 761 P.2d 278, 281 (Colo. App. 1988).  *See also Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 563 (Colo. App. 2004) (noting that a court may reform a contract only if "the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of both parties.")

"[A] mutual mistake requires that *both* parties must labor under the same erroneous conception in respect to the terms and conditions of the instrument." *Maryland Cas. Co. v. Buckeye Gas Products Co.*, 797 P.2d 11, 13 (Colo. 1990) (internal quotations and citations omitted).  Here, there are no facts supporting a mutual mistake.  Instead, Plaintiffs allege that they are "entitled to coverage based on [their] reasonable expectations derived from the insurer's conduct."  (Doc. No. 62 at 6.)

Humana sent two letters to Plaintiffs on December 14, 2013, both of which used the term "effective date" and neither of which specifically set forth that Plaintiffs' policy had a fifteen day

waiting period before the effective date for sickness coverage.  The Amended Complaint alleges

that Humana "caused Plaintiffs to mistakenly understand that the said policy . . . was effective

for all coverages."  (Am.Compl. ¶ 47.) Plaintiffs have neither pleaded, nor can they plead, that

Humana actually intended the Policy's effective date for all coverage, including that for sickness,

was December 10, 2013.  Plaintiffs' mistake regarding the effective date for sickness coverage

was unilateral.[4]

As noted, this court finds no alleged misrepresentation of any material fact by Humana.

The Application stated that the sickness effective date was 15 days after the effective date of the

Policy.  The Policy itself plainly stated on the cover page that the sickness effective date was

December 25, 2013.  One of the two letters upon which Plaintiffs rely to justify their position

that the sickness effective date should be reformed to December 10, 2013, refers Plaintiffs to the

internet location of the documents, where the sickness date is prominently displayed on the first

page of the Policy.

The failure of Plaintiffs to adequately inspect the Application and the Policy does not in

itself impute fraudulent or inequitable conduct to Humana, regardless of Humana's reasons for

incorporating the separate sickness effective date.  At best, the Amended Complaint alleges

negligence on the part of Humana by not making it clear, each and every time the phrase

"effective date" was used, that the policy actually had two effective dates depending upon the

health needs of the claimant.  *See Smith v. Whitlow*, 268 P.2d 1031, 1034-35 (1954) (holding that

a contract will not be reformed on ground of mistake at instance of the party who prepared it

when it appears that alleged lack of knowledge was due to the complaining party's failure to

---

[4] The denial of coverage for a December 20, 2013 planned surgery unequivocally expresses
Humana's intent that the sickness effective date be December 25, 2013.

exercise reasonable diligence); *see also Brown v. Cnty. of Genesee*, 872 F.2d 169 (6th Cir. 1989) (holding that where one party enters settlement agreement with incorrect facts, other party does not commit fraud by failing to alert party to mistake).  Plaintiffs' unilateral mistake about the sickness coverage was disavowed by the insurer at the earliest moment Humana could have known of Plaintiffs' mistake.

There are no allegations in the Amended Complaint that, if proved, would support reformation of the contract to remove the sickness effective date or to adjust the sickness effective date to December 10, 2013.  *See Boyles Bros.*, 761 P.2d at 282.  Therefore, this court recommends that Humana's motion with respect to the Second, Third and Fourth Claims for Relief be granted and that those claims be dismissed.

> ### 2. First Claim for Relief - Breach of Contract
> ### Eighth Claim for Relief – Willful and Wanton Common Law Breach of Contract

It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and, (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992); *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011).  An insurance policy is a contract and, in the absence of an ambiguity, should be interpreted according to the plain and ordinary meaning of its terms. *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 60 (Colo. 1990).  *See, cf. State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165, 167-68 (Colo.1993); *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 324 (Colo. App. 1995)

Contract interpretation is a matter for the Court to decide. *Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P.3d 692, 696-97 (Colo. 2009).  This is as true with regard to insurance policies as it is with commercial contracts.  *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.,* 661 F.3d 1272, 1283 (10th Cir. 2011) ("Under Colorado law, we construe insurance policies using general principles of contract interpretation.").  Language used in a policy "must be construed in accordance with the plain meaning of the words used."  *Level 3 Commc'ns, LLC v. Liebert Corp.,* 535 F.3d 1146, 1154 (10th Cir. 2008) ("In other words, common usage prevails, and 'strained constructions should be avoided.'") (internal citations omitted).

A policy term is ambiguous when it is susceptible to more than one reasonable interpretation.  *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1091 (Colo. 1991).  But "the mere fact that the parties disagree on the meaning of a term does not establish ambiguity." *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1143 (10th Cir. 2008).  In determining whether there is an ambiguity in a policy provision, the court must evaluate the policy as a whole using the generally accepted meaning of the words employed. *Wota v. Blue Cross Blue Shield of Colo.,* 831 P.2d 1307, 1309 (Colo. 1992); *see also J & S Enters., Inc. v. Cont'l Cas. Co.,* 825 P.2d 1020, 1023 (Colo. App. 1991) ("[A]ll parts and clauses of a contract, including exceptions and conditions, must be considered together in order to determine if one particular clause is explained, modified, limited, or controlled by any other clause.").  Once an ambiguity in the policy language is found, it is construed against the drafter of the document and in favor of the insured.  *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994); *Simon v. Shelter Gen. Ins. Co.,* 842 P.2d 236, 239 (Colo. 1992).

The Policy defines pre-existing condition as

>**Pre-existing condition** means any disease, illness, *sickness,* malady or condition which was diagnosed or treated by a provider during the specified time period prior to the *covered person's effective date.*
>
>The time period for *pre-existing conditions* affects the benefits under this *policy* and is described in the "Pre-existing Condition Limitation" section.

(Doc. No. 27-6 at 10 (emphasis in original.))

>The policy further provides in the "Pre-existing Condition Limitation" section
>
>A *sickness* or *bodily injury* and related complications for which medical advice, consultation, diagnosis, care or treatment was sought, received or recommended from a *healthcare practitioner* or *prescription* drugs were prescribed during the 12-month period immediately prior to the *covered person's effective date.* regardless of whether the condition was diagnosed, misdiagnosed or not diagnosed.

(Doc. No. 27-4 at 21 (emphasis in original.))  With respect to the limits on pre-existing

conditions, the policy provides

>*We* will not pay benefits for *services* rendered for *pre-existing conditions* or complications of a *pre-existing condition* for a period of 12 months from the *effective date* of the *covered person* unless those conditions were fully disclosed on the application for this *policy* and benefits relating to those conditions are not specifically excluded.
>
>Any condition not disclosed on the application may result in rescission or reformation of this *policy* and/or modification of benefits. Rescission means that coverage is void from the *effective date.* See the "Incontestability" provision in the "General Provisions" section.

(*Id.* (emphasis in original.))  The policy also states

>**Effective date** means the first date all the terms and provisions of this *policy* apply. It is the date that appears on the cover of this *policy* or on the date of any amendment, rider or endorsement. The *effective date* for *sickness* will always be on the 15th day after the *effective date* for *bodily injury* unless amended

(Doc. No. 27-5 at 20 (emphasis in original.))

With respect to the definition of effective date, the two dates appearing on the Policy are December 10, 2013 and December 25, 2013. Obviously, December 10, 2013 is the "first date" that appears on the cover of the policy, rendering the meaning of the modifier "all the terms and provisions of this *policy* apply" significant.

Plaintiffs argue that the first date that all the policy terms apply is December 10, 2013, since the entire policy had to be actually *in effect* to even determine when sickness benefits would become available. One of the policy **terms** is the fifteen day waiting period for sickness coverage. That **term**, along with all other terms of the Policy, was in effect as of December 10, 2013. Essentially the argument is that there is a difference between a policy being in effect versus the insured's right to benefits thereunder with respect to the kind of injury or illness for which coverage is sought.

The court finds that this interpretation is reasonable and is consistent with Humana's letters sent to Plaintiffs on December 14, 2013, as well as the other terms of the policy. *See*, *e.g.*, Application at 5, "If this application for coverage is accepted, coverage will be effective on the date specified by Humana on the policy. Unless Humana agrees to an earlier date, the effective date for sickness begins on the 15th day <u>after</u> *the approved effective date of the policy*." (indicating that the "effective date" of the policy was something other than the "sickness effective date."); Beard Payment Authorization, "This authorization shall not be construed as modifying any provision of the coverage; eHealth letter #1, "Congratulations! Humana has approved your health insurance application. Your coverage will be effective as of 12-10-2013."; eHealth letter #2, "Humana has approved your health insurance application. Your coverage will be effective as of 12-10-2013."; Messer letter from Humana, "Your first draft payment is

withdrawn on the later of your Policy's effective date or the Policy issue date. . . . Policy

effective 12/10/2013."; and, DeRaleau letter from Humana, "Your coverage effective date, and

initial payment due date is 12/10/2013."

Defendant's position is that the claims received for services on or after December 25,

2013 were correctly denied because Mr. Aurzadniczek sought treatment for the testicular mass

prior to the sickness effective date.  Defendant correctly states that insurance **coverage** was not

available for sickness prior to December 25, 2013.  Defendant claims that because the condition

affecting Mr. Aurzadniczek was a "sickness," the effective date of the Policy *as to this condition*

was December 25, 2013 and therefore Mr. Aurzadniczek's pre-existing limitation would be for a

period of 12 months from the sickness effective date.  Since he initially sought treatment for the

testicular mass on December 19, 2013 and certain lab tests were begun, the mass on his testicle

was a pre-existing condition with respect to his sickness effective date.

Sickness is defined in the policy as follows

> **Sickness** means disturbance in function or structure of the *covered person's* body
> which causes physical signs or symptoms which, if left untreated, will result in a
> deterioration of the health state of the structure or system(s) of the *covered
> person's* body.

(Doc. No. 27-6 at 12 (emphasis in original.))  The court finds that Defendant's contract

interpretation requires that the word "sickness" be read into the Pre-Existing Condition definition

of the Policy where it does not actually appear, thus changing the language of the limitation to

read:

> A *sickness* or *bodily injury* and related complications for which medical advice,
> consultation, diagnosis, care or treatment was sought, received or recommended
> from a *healthcare practitioner* or *prescription* drugs were prescribed during the
> 12-month period immediately prior to the *covered person's [sickness] effective
> date* . . . . [and] "*We* will not pay benefits for *services* rendered for *pre-existing*

23

> *conditions* or complications of a *pre-existing condition* for a period of 12 months from the **[sickness]** *effective date* of the *covered person* . . . .

The court finds this interpretation to be strained.  Because the sickness coverage effective date was clearly set forth both on the Policy cover page and on the Application, at this stage of the proceedings, the court finds that at the very least the Pre-existing Condition definition and limitation is ambiguous.

Ambiguous provisions in a contract, such as an insurance policy, will be construed against the drafter, in this case Humana.  In evaluating a motion at the Rule 12 dismissal stage, applying the provision consistent with Plaintiffs' interpretation, the Pre-existing Limitation of the policy would be read as:

> A *sickness* or *bodily injury* and related complications for which medical advice, consultation, diagnosis, care or treatment was sought, received or recommended from a *healthcare practitioner* or *prescription* drugs were prescribed during the 12-month period immediately prior to [December 10, 2013] . . . . [and] "*We* will not pay benefits for *services* rendered for *pre-existing conditions* or complications of a *pre-existing condition* for a period of 12 months from **[December 10, 2013]** . . . .

The Plaintiffs, therefore, have set forth facts supporting a Breach of Contract claim for failure to pay covered expenses between December 26, 2013 and March 14, 2014, in connection with Mr. Aurzadniczek's treatment for embryonal carcinoma.  The Amended Complaint alleges that 1) there was an insurance policy, *i.e.* a contract, in effect; 2) there was performance by Plaintiffs in that there are allegations Plaintiffs made payment of all premiums (Am.Compl. ¶ 77); 3) Humana denied and failed to pay all claims between December 26, 2013 and March 14, 2014 (*Id*. ¶ 16); and, 4) Plaintiffs were left owing health providers more than $200,000.00 in what they claim should have been covered expenses in connection with a covered sickness.  (*Id*.

¶ 25.)  Therefore, this court recommends that Humana's Motion to Dismiss with respect to the First Claim for Relief be denied.

Further, the Colorado Supreme Court has concluded that if a willful and wanton breach of contract is proven, the claimant may receive all non-economic damages that were foreseeable at the time of contracting and are a natural and probable result of the breach.  *Giampapa v. Am. Family Mut. Ins. Co.,* 64 P.3d 230, 238 (Colo. 2003).  However, *Giampapa*, along with *Decker v. Browning–Ferris Indust.,* 931 P.2d 436 (Colo.1997), contemplate, not separate claims, but rather the extent of damages available for a breach of contract when such a breach is willful and wanton.  The case law does not create a distinct cause of action separate from common law breach of contract.  *Halprin v. Equitable Life Assur. Soc. of United States*, 267 F. Supp. 2d 1030, 1033-34 (D. Colo. 2003).

For instance, in *Giampapa,* the plaintiff sought recovery for "three types of actions": "contract law, tort law, and the Colorado Auto Accident Reparations Act."  *Id.* at 234. The Court stated, "Under the contract claim specifically, the jury awarded Giampapa $ 900,000 in economic and non-economic 'special damages' for American Family's willful-and-wanton breach of contract" and referred to willful and wanton breach of contract and common law breach of contract interchangeably.  *Id.*  This court, as did Senior District Judge Babcock in *Halprin*, finds that the claims are one and the same.  *Halprin*, 267 F. Supp. 2d at 1034.  Because Plaintiffs assert a separate willful and wanton breach of contract claim apart from a claim premised on common law breach of contract, this court recommends that Humana's Motion to Dismiss the Eighth claim for willful and wanton breach of contract be granted and that claim dismissed.

### 3.      *Sixth and Seventh Claims for Relief - Bad Faith Claims*

The elements of a common law bad faith claim are: (1) that the insurer acted

unreasonably under the circumstances, and (2) that the insurer either knowingly or recklessly

disregarded the validity of the insured's claim. *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 496

(Colo. App. 2011).  "An insurer will be found to have acted in bad faith only where it

"intentionally denied, failed to process, or failed to pay a claim without a reasonable basis." *Id.*

at 497.  "[A] bad faith claim must fail if . . . coverage was properly denied and the plaintiff's

only claimed damages flowed from the denial of coverage." *MarkWest Hydrocarbon, Inc. v.*

*Liberty Mut. Ins. Co*., 558 F.3d 1184, 1193 (10th Cir. 2009); *see also Wagner v. Am. Family*

*Mut. Ins. Co.*, 569 F. App'x Case  574, 580 (10th Cir. 2014) (finding nothing unreasonable about

the insurer's denial of a claim where it properly denied the claim pursuant to a properly applied

exclusion).  Generally, then, "[a]n insurer's liability for bad faith breach of insurance contract

depends on whether its conduct was appropriate under the circumstances." *Goodson v. Am.*

*Standard Ins. Co. of Wis.,* 89 P.3d 409, 415 (Colo. 2004).  However, to prevail in a first-party

claim, a plaintiff must show two elements: (1) the insurer acted unreasonably and (2) the insurer

"either knowingly or recklessly disregarded the validity of the insured's claim." *Id.*; *Dale v.*

*Guar. Nat'l Ins. Co.,* 948 P.2d 545, 551 (Colo.1997); *Pham v. State Farm Mut. Auto. Ins. Co.,* 70

P.3d 567, 572 (Colo. App. 2003) (citing *Dale,* 948 P.2d 545).

The reasonableness of the insurer's conduct must be determined objectively, based on

proof of industry standards." *Goodson,* 89 P.3d at 415; *Am. Family Mut. Ins. v. Allen,* 102 P.3d

333, 343 (Colo. 2004).  "Expert witnesses can provide additional relevant evidence of the

standard of care if the standard is not within the common knowledge of the ordinary juror."

*Allen,* 102 P.3d at 343 (citing *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 931 (Colo. 1997)).  However, "expert testimony is not required to establish the reasonableness of the insurer's conduct where the standard of care does not entail specialized knowledge or skill beyond that of the average juror."  *Id.*  (citing *Surdyka v. DeWitt,* 784 P.2d 819, 822 (Colo. App. 1989)); *Grabau v. Target Corp.,* No.06-cv-01308-WDM-KLM, 2008 WL 179442, at *3-4 (D. Colo. Jan. 17, 2008).

Given this court's determination that the breach of contract claim has been adequately pleaded and that Plaintiffs' interpretation of the Policy's effective date is reasonable, this court finds that the Amended Complaint also contains sufficient facts, accepted as true, to support a claim that Humana "intentionally denied, failed to process, or failed to pay a claim without a reasonable basis" with respect to the claims made between December 26, 2013 and March 14, 2014.  *Zolman,* 261 P.3d at 497.  Humana issued two letters to Plaintiffs indicating that they defined the effective date of the policy as December 10, 2013.  If December 10, 2013 is the effective date of the policy, Mr. Aurzadniczek's testicular mass was not a pre-existing condition merely because he sought treatment for it on December 19, 2013.[5]  Under those pleaded facts, Plaintiffs have alleged that Humana's conduct, by first approving but later denying Plaintiff Aurzadniczek's claims for treatment of his testicular cancer, was in bad faith.  (Am.Compl., ¶ 15).

For the same reasons, this court finds that Plaintiffs have also adequately pleaded their claim for statutory bad faith.  Pursuant to statute, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on

---

[5] This is true even assuming that coverage for sickness-related conditions on December 19, 2013 was not available.

behalf of any first party claimant." C.R.S. § 10-3-1115(1)(a). An insurer's delay or denial is

unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without

a reasonable basis for that action." *Id*. at § 10-3-1115(2). Similar to common-law bad faith

claims, "[t]he determination of whether an insurer has breached its duties [in the statutory

context] to the insured is one of reasonableness under the circumstances." *Sipes v. Allstate*

*Indem. Co*, 949 F. Supp. 2d 1079, 1084–85 (D. Colo. 2013). This inquiry asks whether a

reasonable insurer under similar circumstances would have denied the claim based on industry

standards that existed at the time. *Id.* at 1084–85, 88. Assuming, for purposes of resolving the

instant motion, Mr. Aurzadniczek's embryonal carcinoma was not a pre-existing condition,

Plaintiffs have adequately pleaded that denial of coverage on or subsequent to December 25,

2013 was made without a reasonable basis. This court recommends that Humana's Motion to

Dismiss Plaintiffs' Sixth and Seventh Claims for Relief be denied.

### 4.  *Tenth Claim for Relief - Loss of Consortium*

Plaintiff Beard's loss-of-consortium claim alleges that, as a result of Humana's alleged

bad faith denial of claims coverage, Plaintiff Beard "has suffered in the past and will suffer in the

future a loss of time, loss of income, loss of consortium, affection, love, society, comfort,

companionship, and household services of her spouse, Plaintiff Aurzadniczek." (Am.Compl. ¶

84.)

A consortium claim is derivative of adequately pleaded tort claims for personal injuries,

unless preempted. *Slack v. Farmers Ins. Exchange*, 5 P.3d 280, 287 (Colo. 2000); C.J.I.-Civ.

6:5, at Notes on Use ¶ 3 (2014) (consortium claim derivative of all "forms of tortious conduct

against the spouse"). A bad faith claim is one for personal injuries since all "traditional tort

damages" are recoverable.  *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996).  Loss of

consortium, as a part of damages, can be brought if the underlying bad faith claim is cognizable.

*Kidneigh v. UNUM Life Ins. Co.*, 345 F.3d 1182, 1189 (10th Cir. 2003).  Having found that the

bad faith claims should go forward in this case, this court finds that Plaintiff Beard has

sufficiently pleaded her loss of consortium claim to survive dismissal under Fed. R. Civ. P.

12(b)(6) and Humana's Motion to Dismiss should be denied as to the Tenth Claim for Relief.

WHEREFORE, for the foregoing reasons, this court respectfully

**RECOMMENDS** that

1.      eHealthinsurance Services, Inc. d/b/a eHealth ("eHealth")'s "Motion to Dismiss

Plaintiffs' Amended Complaint" (Doc. No. 42) be **GRANTED** and that all claims against

eHealthinsurance Services, Inc. d/b/a eHealth be **DISMISSED** and that eHealthinsurance

Services, Inc. d/b/a eHealth be terminated as a Defendant in this case.

2.      "Defendants Humana Health Plan, Inc. and Humana Health Insurance Company's

Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 27)" (Doc. No. 41) be **GRANTED in**

**part** and **DENIED in part** as follows:

a.      Humana's Motion be **GRANTED** with respect to the Second, Third,

Fourth, Fifth and Ninth Claims for relief and that those claims be dismissed; and

b.      Humana's Motion be **DENIED** with respect to the First, Sixth, Seventh,

Eighth and Tenth claims for relief.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 23rd day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge